UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>CLAUDIO VALDEZ,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Cr. No. 17-037-JJM-LDA

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge

Claudio Valdez has petitioned this Court under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, entered after he pled guilty to one count of conspiracy to distribute heroin, cocaine, cocaine base, and fentanyl, and one count of illegal reentry. He now claims that the Court should vacate his sentence because he received ineffective assistance of counsel. The Court has determined that no hearing is necessary. The Court finds that Mr. Valdez's Motion to Vacate (ECF No. 270) lacks merit and thus DENIES his petition.

## FACTS

Following a long investigation by multiple agencies into drug trafficking in Rhode Island, Massachusetts, and Connecticut, Mr. Valdez was arrested under a Complaint filed in this Court. A grand jury sitting in the District of Rhode Island then indicted Mr. Valdez, among others, on one count of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin and other amounts of cocaine, cocaine base, and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A),

and 846 (Count 1); and one count of illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2) (Count 2).  Mr. Valdez pled guilty, by a written plea agreement, to both charges.  The Court sentenced him to 240 months imprisonment, followed by supervised release for five years.

Mr. Valdez appealed the Court's denial of two motions, to withdraw his guilty plea and to appoint new counsel.  The First Circuit affirmed the denials, and the Supreme Court denied certiorari.

Mr. Valdez timely filed this Motion to Vacate.

## LAW

### A.    Section 2255

Section 2255 provides for post-conviction relief only if a court sentenced a petitioner in violation of the Constitution or lacked jurisdiction to impose the sentence, if the sentence exceeded the statutory maximum, or if the sentence is otherwise subject to collateral attack.  *See United States v. Addonizio*, 442 U.S. 178, 185 (1979); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).  In trying to collaterally attack his sentence, the petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief under § 2255.  *See Mack v. United States*, 635 F.2d 20, 26–27 (1st Cir. 1980).  For example, a petitioner must show "exceptional circumstances," such as an error of law constituting a "fundamental defect which inherently results in a complete miscarriage of justice." *See Hill v. United States*, 368 U.S. 424, 428 (1962).

### B.    *Strickland*

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). That said, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

The two-pronged *Strickland* is best summarized in *United States v. Manon*, 608 F.3d 126 (1st Cir. 2010). In defining *Strickland*, it states the following:

> To prevail on a claim of ineffective assistance of counsel, a defendant must show not only that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, but also that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. To satisfy the deficient-performance prong, the defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment, and the court then determines whether, in the particular context, the identified conduct or inaction was outside the wide range of professionally competent assistance.
>
> The prejudice factor requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. In making the prejudice assessment, [courts] focus on the fundamental fairness of the proceeding.

*Id.* at 131 (citations omitted) (internal quotations omitted).

Unless the petitioner makes both showings—that there were both serious and prejudicial errors—the court cannot say that the conviction resulted from a

"breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

Thus, *Strickland* sets forth two key principles. First, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Next, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

The same principles apply in the context of guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In applying the standard to guilty pleas, the first prong is the same. *Id.*

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 59. In this sense, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citing *Missouri v. Frye*, 566 U.S. 134, 148 (2012)). "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively." *Lockhart*, 474 U.S. at 59–60.

## ANALYSIS

Mr. Valdez alleges that counsel was ineffective on four overlapping grounds. Mot. to Vacate at 4–9.[1]  First, Mr. Valdez suggests that counsel rendered ineffective assistance for inducing him to accept a plea that was not knowing and voluntary. *Id.* at 4.[2]   Second, he argues that counsel was ineffective "for failure to contest petitioner['s] prior(s) which was adjudicated as a crime of violence which increased the base offense level in error." *Id.* at 5.  Third, Mr. Valdez alleges that counsel was ineffective for failing to contest the amount of drugs determined by the probation office, which he claims was not accurate. *Id.* at 6.  Fourth, he asserts that counsel induced him to accept a plea agreement for a specific amount of time when he understood that his sentence would be lower. *Id.* at 8.  The Court will address each of Mr. Valdez's grounds for relief, although in different order.

First, Mr. Valdez argues that counsel rendered ineffective assistance by inducing him to accept a plea that was not knowing and voluntary. Mot. to Vacate at 4.  The record belies his contention that the plea was unknowing and involuntary. Mr. Valdez acknowledged in the plea agreement that "no person has, directly or indirectly, threatened or coerced Defendant to enter this agreement."   Plea Agreement (ECF No. 110) ("Plea Agrmt.") ¶ 16. He also stated that he "has read the agreement or has had it read to Defendant, has discussed it with Defendant's

---

[1]  Page numbers refer to the pagination generated by the Court's electronic case filing system ("ECF").

[2]  Ground One includes subpoints, several of which overlap with Mr. Valdez's other grounds for relief.  *See* Mot. to Vacate at 4.  They will be addressed mainly with Mr. Valdez's other claims.

Counsel, understands it, and agrees to its provisions." *Id.* ¶ 18. Similarly, counsel attested that he had read the agreement, been given a copy of it for his file, "explained it to Defendant, and . . . that to the best of Counsel's knowledge and belief, Defendant understands the agreement." *Id.* ¶ 17.

During the change of plea hearing, the Court first asked Mr. Valdez, under oath, if he remembered signing the plea agreement. He responded affirmatively. Transcript of June 7, 2018, Change of Plea Hearing (ECF No. 246) (" Plea Hrng. Tr.") at 3. The Court continued:

> THE COURT:    Did you sign that plea agreement after you thoroughly reviewed the plea agreement with your attorney and he answered any questions that you have about that plea agreement?
>
> THE DEFENDANT:    Yes.
>
> THE COURT:    And do you understand as part of that plea agreement that your attorney has stated in there that you've signed that your attorney will recommend 20 years of imprisonment and the Government will recommend 20 years of imprisonment? Do you understand that's contained in the plea agreement?
>
> THE DEFENDANT:    Yes.

*Id.* at 3–4. The Court asked about Mr. Valdez's medications and whether anything he was taking (or had not taken that day) had any effect on his ability to think clearly. *Id.* at 5–6. Mr. Valdez responded that he was "aware of what's happening" and "can think clearly." *Id.* The Court went on with the colloquy:

> THE COURT:    Great. Did you receive a copy, Mr. Valdez, of the Indictment? That's the written charges that the Government brought against you in this case.
>
> THE DEFENDANT:    I did.

THE COURT:     And did you discuss the Indictment with your attorney and the consequences of the Indictment, and did he answer any questions that you have about that Indictment?

THE DEFENDANT:     Yes.

THE COURT:     And are you fully satisfied, Mr. Valdez, with the representation that you've received from [your attorney] in this case?

THE DEFENDANT:     Yes.

*Id.* at 6–7.[3] The Court then reviewed with Mr. Valdez the rights he would be waiving by pleading guilty, *id.* at 7–9, and the likelihood that he would be deported if he pled guilty, *id.* at 11. After summarizing Mr. Valdez's trial rights, the Court stated:

---

[3] Several months before the change of plea hearing, Mr. Valdez, acting pro se, had moved to dismiss his attorney and appoint new counsel (ECF No. 73), as had several of his co-defendants. Mr. Valdez declined to address the Court, Transcript of February 15, 2018, Motion Hearing (ECF No. 97) ("Mot. Hrng. Tr.") at 5, but the Court questioned counsel about the motion and whether he could ethically continue to represent Mr. Valdez effectively and competently at that point. *Id.* at 8. Counsel responded that he could. *Id.* The Court then addressed Mr. Valdez:

> In reviewing these motions and also reviewing the weight of the evidence in this case and the prior background of this defendant, as well as some of his other codefendants, I'm of the opinion that these motions to dismiss counsel are purely tactical attempts to try to either create appeal issues or to delay proceedings by the replacement of counsel. The weight of the evidence against this defendant and other defendants in this case is strong. . . .

> The case is what it is. I don't think there's any basis presented to the Court for replacement of counsel or any basis before the Court that Mr. Valdez is not receiving effective assistance of counsel. Mr. Valdez, of course, has the right to retain counsel if he can find resources or have others provide resources for him to hire an attorney. When you request court-appointed counsel, he is entitled under the law to a competent attorney, which he has been provided with at no cost to him. He is not entitled to counsel of his choice or to change counsel at a whim or for other strategic or tactical reasons.

> THE COURT:     So if you change your plea to guilty today, Mr. Valdez, there will be no trial and you'll give up all of these rights.  Do you understand that?
>
> THE DEFENDANT:     Yes.
>
> THE COURT:     Has anyone in any way attempted to force you to plead guilty or threatened you in any way to get you to plead guilty?
>
> THE DEFENDANT:     No.
>
> THE COURT:     So are you voluntarily changing your plea to guilty today because you've now determined it's in your best interest to do so?
>
> THE DEFENDANT:     Yes.

*Id.* at 9.

Next, the Court summarized the statutory minimum and maximum penalties Mr. Valdez faced on each count and the Presentence Investigative Report ("PSR") the probation office would prepare after interviewing him. *Id.* at 10–12. The Court then asked the Government to summarize the elements of the charges against Mr. Valdez and the facts the Government would prove if the case were to go to trial. *Id.* at 13–14, 22–25. At the end of the Government's recitation, the Court stated:

> THE COURT:     Mr. Valdez, you heard the elements of the two counts the Government has brought against you.  I again remind you they'd have to prove each and every one of those elements beyond a reasonable doubt for you to be found guilty of either or both charges.
>
> You also heard the facts the Government would prove if this case were to go to trial.  Do you admit the facts as stated by the Government as true?
>
> THE DEFENDANT:     Yes.

---

*Id.* at 8–9.

*Id.* at 25.  The Court offered Mr. Valdez the opportunity to ask questions or discuss

anything with his counsel, which Mr. Valdez declined.  *Id.*  The Court then asked:

> THE COURT:     Mr. Valdez, how do you now plead to the two counts
> contained in the Indictment brought against you, guilty or not guilty?
>
> THE DEFENDANT:     Guilty.

*Id.*  The Court held:

> THE COURT:     This Court has heard from the Government the
> evidence it would produce if this matter were to go to trial.  The Court
> has questioned the Defendant regarding his understanding of the
> nature of the proceedings and the consequences of entering a plea of
> guilty to the charge.
>
> It is, therefore, the finding of this Court in the case of the United States
> versus Claudio Valdez Nunez that the Defendant is fully competent and
> capable of entering an informed plea, that the defendant is aware of the
> consequences of the plea and the nature of the charges and that the plea
> of guilty is a knowing and voluntary plea supported by an independent
> basis in fact containing each of the essential elements of the charge; and,
> therefore, the plea is accepted, and the Defendant is now adjudged guilty
> of those offenses.

*Id.* at 25–26.

Then, at the outset of the sentencing hearing, Mr. Valdez moved to withdraw

his plea.  Sent. Hrng. Tr. at 4–5.  Mr. Valdez's statement is as follows:

> I signed that -- meaning plea agreement -- because my lawyer told me
> that my sentence would be 10 to 20 years.  However, I have now learned
> that this is not the case.  My lawyer never explained with certitude so
> that I could have a better understanding of the process of coming to or
> agreeing to a plea.  He never reviewed the evidence with me; that is, he
> never reviewed it before the agreement. . . .
>
> I signed the plea agreement which I did not understand, and right now
> I wish to withdraw from that agreement and to abandon that
> negotiation. . . .

*Id.* at 4.

The Court, in denying Mr. Valdez's motion, stated:

> As to your motion to withdraw the plea, that also is going to be denied.
> I vividly recall our change of plea hearing on the record.  I vividly recall
> you under oath admitting that you were satisfied with your
> representation of counsel, that he had fully explained the matter to you,
> that you were aware that the plea that you told me you knowingly and
> voluntarily signed included a mandatory binding 20-year sentence.  I
> vividly recall that colloquy with you and observing you voluntarily make
> those admissions under oath.  And you've not presented any evidence to
> this Court that would support a withdrawal of the plea, so that motion
> is denied as well.

*Id.* at 11–12.[4]

In his current motion, Mr. Valdez has not showed that his counsel "induc[ed]"

him to accept a plea that was not knowingly and voluntarily entered.  Mot. to Vacate

at 4.  In fact, the evidence before the Court is to the contrary.  The record supports

the notion that Mr. Valdez knowingly and voluntarily entered into his plea.  Thus,

Mr. Valdez has provided no basis for this Court to withdraw his plea.  *See* Sent. Hrng.

Tr. at 12.

Mr. Valdez argues that counsel "rendered ineffective assistance for inducing

petitioner to accept a plea agreement for a specific amount of time (20 years) where

petitioner understood his sentence [would] be less[.]"  Mot. to Vacate at 8.  He also

alleges that counsel provided ineffective assistance by failing to explain the minimum

mandatory sentence he faced by pleading guilty, and by "forc[ing]" him to accept the

---

[4] As noted, the First Circuit affirmed the Court's denial of Mr. Valdez's
motion to withdraw his plea.  *See United States v. Valdez*, 975 F.3d 63, 68–69 (1st
Cir. 2020).

plea by stating it was his only option other than a life sentence. *Id.* at 4. Again, the record reveals otherwise.

The plea agreement explicitly states that, as a result of the agreement, both defense counsel and the Government would recommend that the Court impose a term of 20 years imprisonment. Plea Agrmt. ¶¶ 1c., 2a.  In the paragraph entitled "Binding Plea," the agreement states that "[t]he parties understand that if this plea agreement is accepted by the Court, the Court will impose a term of 20 years imprisonment," *id.* ¶ 3a., and that "[t]he Defendant is aware that his sentence is within the sound discretion of the court," *id.* ¶ 3b.[5]

Paragraph seven of the plea agreement spelled out the maximum statutory penalties for the offenses to which Mr. Valdez was agreeing to plead guilty. *Id.* ¶ 7. In addition, ¶ 7 states:

> Defendant understands that if the court were to impose the sentences consecutively he could be sentenced to more than life imprisonment; . . . [and] a term of supervised release for life. . . . Defendant further understands that the statutory penalty for Count One carries a minimum mandatory period of imprisonment for 10 years and that the Court could not sentence Defendant to less than that length of time in prison but that, if the court accepts this binding plea agreement, he will be sentenced to 20 years of imprisonment.

*Id.* The plea agreement could not have been more explicit that, by signing the plea agreement, Mr. Valdez was agreeing to a sentence of 20 years.[6]

---

[5] This notion was repeated at the Change of Plea Hearing. *See* Plea Hrng. Tr. at 3–4.

[6] As noted above, Mr. Valdez stated that he had read the plea agreement or had it read to him, discussed it with counsel, understood it, and agreed to its provisions. Plea Agrmt. ¶ 18.  Counsel also stated that he had read the plea agreement, received a copy of it, explained it to Mr. Valdez, and told the Court that

If Mr. Valdez did not understand the plea agreement before the change of plea hearing, during the hearing the Court sought to ensure that he did:

> THE COURT:      If I ask you a question that you do not understand, just ask me to explain it further, and I'd be glad to.  And if at any time, including before answering a question, you want to talk with your lawyer, you just tell me, and I'll give you that opportunity.  All right?
>
> THE DEFENDANT:      Okay.

Plea Hrng. Tr. at 3.  The Court later explained the statutory minimum and maximum penalties Mr. Valdez faced and the maximum prison time he could receive if the Court imposed the penalties for each count consecutively.  *Id.* at 10–11.  Mr. Valdez agreed, and he stated that he understood.[7]  *Id.* at 11.

Mr. Valdez's claim that if "[h]ad [he] know[n] he was facing 20 years for the instant offense with no other option he [would] not [have] signed the plea" seems to contradict the record.  Mot. to Vacate at 8.  If Mr. Valdez expected a sentence other than the 20 years to which he agreed when he signed the plea agreement, he should have raised his concerns at that point or spoken up in in Court when given the opportunity to do so prior to knowingly and voluntarily pleading guilty.  He cannot now blame counsel for his own choices.  *Cf. Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence.").  Mr. Valdez has provided no evidence of inducement beyond his own statements, which the Court need not accept at face

---

"to the best of Counsel's knowledge and belief, Defendant understands the agreement." *Id.* ¶ 17.

[7] The Government reinforced the point during the sentencing hearing, in discussing Mr. Valdez's motions. *See* Sent. Hrng. Tr. at 6.

value. *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) ("[T]he court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."). Thus, the Court rejects Mr. Valdez's claim that counsel was ineffective for inducing him to sign a plea agreement for 20 years imprisonment when Mr. Valdez thought he would receive a lower sentence. Mot. to Vacate at 8.

Next, Mr. Valdez contends that counsel provided ineffective assistance by failing to contest his prior convictions, which caused an erroneous calculation of his base offense level in the Presentence Investigation Report ("PSR") (ECF No. 173). Mot. to Vacate at 5. According to Mr. Valdez, he "addressed to counsel, prior to the sentencing hearing, his criminal history was not accurate. The presentence report adduced to [sic] prior convictions not supposed to be used. A prior conviction used as a crime of violence is currently under investigation for using false information in this particular matter." *Id.*

The PSR lists three adult criminal convictions, two of which earned criminal history points (three each). PSR ¶¶74–76. Both involved drug possession or trafficking. *Id.* ¶¶ 74, 76. In addition, the PSR lists "Other Criminal Conduct," *id.* ¶¶78–83, none of which earned criminal history points. In the Motion to Vacate, Mr. Valdez does not specify how his criminal history is inaccurate or which conviction is currently under investigation, although he identifies a particular conviction at issue in his reply. In his reply memorandum, Mr. Valdez questions the veracity of the Government's statement:

> The government asseveration that they "contacted the Norfolk County
> District Attorney's Office to ascertain the conviction's status. The
> government confirmed that Valdez's (petitioner) Massachusetts
> conviction was not vacated as a result of the scandal and is still valid" is
> not supported by an affidavit from the Norfolk County attorney's office.
> The government [sic] alleged call is not supported by any written
> statement that made valid the adduced prior conviction.

Reply To Gov't's Opp. (ECF No. 281) ("Reply") at 4. Mr. Valdez suggests that "[t]he

district court should inquire into the government's alleged phone call and determine

if it is true petitioner [sic] alleged prior is still valid. In the instant case an

evidentiary hearing is necessary to expand the record on both grounds." *Id.* at 5.[8]

The Court does not agree.

As the Government notes, "unless either of these convictions had been vacated

on legal or constitutional ground[s] as of the time of Valdez's sentencing, both defense

counsel and the Court were correct to rely on them to calculate Valdez's [Criminal

---

[8] The second ground appears to be Mr. Valdez's complaint that "in the context
of claims involving attorney-client disputes that '[w]here the accused voices objections
to appointed counsel, the trial court should inquire into the reasons for the
dissatisfaction.' The failure to conduct such an inquiry constitutes an abuse of
discretion." Reply at 4 (alteration in original) (internal citations omitted). Mr. Valdez
appears to suggest that the Court ignored his complaints about trial counsel, which
the record reveals is false.
   At the outset of the sentencing hearing, the Court observed that Mr. Valdez
wished to make a motion for a new attorney. Sent. Hrng. Tr. at 2. The Court heard
from Mr. Valdez and allowed the interpreter to read a letter from Mr. Valdez to the
Court into the record. *Id.* at 3–5. The Court then heard from the Government and
counsel in response to Mr. Valdez's motion. *Id.* at 5–10. The Court denied the motion
and explained its reasoning on the record. *Id.* at 10–11.
   Thus, the Court did not fail to conduct an inquiry, and an evidentiary hearing
is unnecessary. *See David v. United States*, 134 F.3d 470, 477 (1st Cir. 1998) ("A
prisoner who invokes section 2255 is not entitled to an evidentiary hearing as a
matter of right." (citing *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993)).
Then, as now, Mr. Valdez provided no basis, beyond his own unsupported statements,
for finding counsel ineffective or granting his motion for new counsel.

History Category]." Opp. To Mot. to Vacate (ECF No. 274) ("Opp.") at 9. Indeed, "the Guidelines themselves make specific provision for *not* counting prior sentences resulting from expunged convictions or from convictions reversed or vacated for errors of law or because constitutionally invalid." *Mateo v. United States*, 398 F.3d 126, 134 (1st Cir. 2005) (emphasis in original). Mr. Valdez has provided no evidence that the Massachusetts conviction has been vacated on legal or constitutional grounds.

As for his claim that counsel was ineffective for failing to contest the amount of drugs as determined by the probation office, Mr. Valdez states that "Counsel failed to contest the amount of drugs after the presentence report was issued. Petitioner addressed this particular matter with counsel prior to the sentencing hearing. Counsel opted to ignore[] petitioner's request and the sentence was imposed without counsel objection." Mot. to Vacate at 6. According to Mr. Valdez, "the amount of drugs and guideline determination was not accurate." *Id.*

The PSR set Mr. Valdez's base offense level at 34 based on the quantity of drugs involved. PSR ¶ 52. As explained by the PSR, in determining a single offense level for multiple controlled substances, each substance is converted to its marijuana equivalent weight. *Id.* ¶ 51 (citing USSG § 2D1.1); *see also United States v. Mills*, 710 F.3d 5, 9 (1st Cir. 2013) ("The sentencing guidelines provide a formula for converting drugs into equivalent units of marijuana for sentencing purposes."). After conversion, the total was 16,681.24 kilograms. PSR ¶ 51; Sent. Hrng. Tr. at 13–14 (explaining the calculation of the base offense level).

Under the plea agreement, Mr. Valdez agreed to plead guilty to conspiracy to distribute a kilogram or more of heroin, cocaine, cocaine base, and fentanyl. Plea Agrmt. ¶ 1a. The Government and Mr. Valdez stipulated and agreed that, during the investigation,

> controlled substances totaling more than 2 kilograms of heroin (some of which contained fentanyl), over 1.5 kilograms of cocaine, as well as hundreds of grams of cocaine base and fentanyl, were purchased and seized; all of which was attributable to the conspiracy and the Valdez [drug trafficking organization] and all of which was reasonably foreseeable to Defendant.

*Id.* ¶ 5. Both parties also stipulated and agreed that "[e]xcept as expressly provided in the preceding paragraphs, there is no agreement as to which Offense Level and Criminal History Category applies in this case." *Id.* ¶ 6. Further, both parties reserved their rights "to argue and present evidence on all matters affecting the guidelines calculation." *Id.* The Court also explained at the change of plea hearing that, before sentencing, the Probation Department would prepare a PSR that would give the Court "information about [Mr. Valdez's] background and other helpful information after they do an investigation that will help at the time of sentencing and help [the Court] determine whether to accept the plea agreement or not." Plea Hrng. Tr. at 12. Thus, the possibility that the Court would reject the plea agreement and sentence Mr. Valdez under the United States Sentencing Guidelines ("USSG") remained open (even though the Court did not do so).

An objection to the drug quantity calculation may have been relevant had Mr. Valdez been sentenced under the USSG.[9]  He was not.  Rather, he was sentenced under a binding plea agreement in which both defense counsel and the Government agreed to recommend a 20-year sentence and which the Court accepted.  Plea Agrmt. ¶¶ 1.c, 2a., 3a.  Mr. Valdez agreed to this sentence.  *See* Plea Agrmt. ¶ 18.  Thus, any objection counsel made to the drug quantity would have been futile.  And counsel need not pursue futile tactics or make futile objections.  *See Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) ("[C]ounsel's performance [would] not [be] deficient if he declined to pursue a futile tactic."); *see also Knight v. Spencer*, 447 F.3d 6, 16 (1st Cir. 2006) (holding that petitioner's "counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that were either non-prejudicial or nonexistent").[10]

Lastly, as to Mr. Valdez's allegation that counsel failed to dispute his role in the conspiracy, that is, that he was neither a leader nor an organizer, Mot. to Vacate at 4, the Court again looks to the record.  In the plea agreement, the Government and Mr. Valdez stipulated that he, "along with his brothers Juan Valdez and Hector Valdez, were leaders and organizers of a drug trafficking organization hereinafter referred to as 'The Valdez DTO.'"  Plea Agrmt. ¶ 5.  As part of its recitation of the

---

[9] As discussed, Mr. Valdez's guideline range was 324 to 405 months, roughly 27 to 34 years imprisonment.  Sent. Hrng. Tr. at 15.

[10] Mr. Valdez misstates the burden of proving ineffective assistance of counsel. Indeed, that burden lies with the petitioner, and not with the government.  *Compare* Reply at 8 *with Bucuvalas v. United States*, 98 F.3d 652, 658 (1st Cir. 1996) ("The defendant bears the burden of proving both prongs of this test.  This burden is heavy." (citation omitted)).

facts during the change of plea hearing, the Government stated that the name of the task force investigation, Operation Triple Play, "was a case name reflecting the investigative finding that three brothers with the surname Valdez organized and ran that organization; that is, this Defendant and his brothers Juan Valdez and Hector Valdez." Plea Hrng. Tr. at 15. As noted above, Mr. Valdez admitted that the facts as stated by the Government were true. *Id.* at 25.

Because Mr. Valdez had already stipulated and agreed that he was "a leader or organizer in the conspiracy," Mot. to Vacate at 4, there was nothing to which counsel could object. *See Knight*, 447 F.3d at 16; *Vieux*, 184 F.3d at 64. Accordingly, the Court rejects Mr. Valdez's final claim of error.

Even if Mr. Valdez had shown that counsel's performance fell below "an objective standard of reasonableness" (and he has not), he cannot prove prejudice as to any of his claims. *See Strickland v. Washington*, 466 U.S. 668, 688, 689 (1984) ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence."). Mr. Valdez faced statutory penalties of ten years to life imprisonment, with a period of supervised release of five years to life, on Count 1. Plea Hrng. Tr. at 10; PSR at ¶¶ 113, 116. For Count 2, Mr. Valdez faced a maximum of 20 years imprisonment and up to three years supervised release. Plea Hrng. Tr. at 10; PSR at ¶¶ 113, 116. During the change of plea hearing, the Court stated:

> THE COURT:   Mr. Valdez, if the Court were to impose the maximum imprisonment time as to each count and if the Court were to require that the sentences be served consecutively, that means one after the other, then there's still a 10-year minimum of imprisonment, up to

a lifetime of imprisonment, . . . [and] up to a lifetime of supervised release.

Do you understand that these are the maximum penalties the Court could impose if you plead guilty to these two counts?

THE DEFENDANT:       Yes.

Plea Hrng. Tr. at 10–11.

Mr. Valdez's guideline range under the USSG was similarly bleak. His total offense level was 39, *see* Sent. Hrng. Tr. at 15; PSR ¶ 72, and his criminal history category was III, Sent. Hrng. Tr. at 15; PSR ¶ 77, which yielded a guideline range of 324 to 405 months, or about 27 to 34 years, imprisonment, *see* Sent. Hrng. Tr. at 15; PSR ¶ 114. The binding plea agreement, on the other hand, called for a recommended sentence of 20 years imprisonment. Plea Agrmt. ¶¶ 1c, 2a. The benefit of the Plea Agreement to Mr. Valdez is obvious, as the Court noted during the sentencing hearing:

> I'm going to accept the plea agreement and sentence you accordingly because I actually believe that while it is not lenient . . . it is a well-negotiated lower sentence than you otherwise could have suffered if we had gone through with this. A guideline range of 27 to almost 34 years, a mandatory minimum that would have tied my hands to upwards of a lifetime, I think we could all recognize are draconian sentences that could have been applied for you, but for the work that your lawyer did and Mr. Sullivan did in negotiating this appropriate deal.

Sent. Hrng. Tr. at 21. The First Circuit also recognized the "substantial benefit conferred by the plea agreement . . . ." *United States v. Valdez*, 975 F.3d 63, 68 (1st Cir. 2020). In addition, both this Court and the First Circuit recognized the strength of the evidence against Mr. Valdez. *See* Mot. Hrng. Tr. at 9; *see also Valdez*, 975 F.3d

at 68 (same).  Accordingly, Mr. Valdez would be hard pressed to establish prejudice under *Strickland.*

Moreover, Mr. Valdez has not shown that the outcome of the plea process would have been different had he received different advice from counsel.  *See Lafler v. Cooper,* 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."); *see also Missouri v. Frye,* 566 U.S. 134, 147 (2012) ("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.").  Although Mr. Valdez states that had he known he was facing a 20-year sentence with no other options he would not have signed the plea agreement, Mot. to Vacate at 8, he provides no support for this claim.  In the context of addressing a different claim of error, the First Circuit stated:

> Valdez makes no attempt to show a reasonable probability that, but for this alleged error, he would not have entered the plea agreement. Given the strength of the evidence against him, as well as the substantial benefit conferred by the plea agreement -- avoiding a mandatory life sentence -- it is highly doubtful that Valdez would have rejected that agreement.

*Valdez,* 975 F.3d at 68.  At best, Mr. Valdez was facing 27 years imprisonment under the USSG with the plea agreement. Sent. Hrng. Tr. at 15.  At worst, Mr. Valdez faced a life sentence. Plea Hrng. Tr. at 10.

Viewing Mr. Valdez's situation objectively, the Court agrees with the First Circuit and concludes that "it is highly doubtful that [Mr.] Valdez would have rejected

that agreement." *Valdez*, 975 F.3d at 68.  Thus, Mr. Valdez has not—and cannot—meet *Strickland's* prejudice prong.

In short, besides failing to prove that counsel's performance was deficient or ineffective, Mr. Valdez has failed to show prejudice.  As a result, he has not satisfied *Strickland's* requirements, and his motion fails.

## CONCLUSION

Mr. Valdez's Motion lacks merit.  The Court therefore DENIES Claudio Valdez's Motion to Vacate his sentence (ECF No. 270) under 28 U.S.C. § 2255.

## RULING ON CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court finds that this case is <u>not</u> appropriate for issuing a certificate of appealability, because Mr. Valdez has failed to make a substantial showing of the denial of a constitutional right on any claim, as required by 28 U.S.C. § 2253(c)(2).

Mr. Valdez is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal here.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief United States District Judge

Date:  June 21, 2022

21